AO 106 (Rev. 06/09)   Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Northern District of Oklahoma

| | |
|---|---|
| In the Matter of the Search of<br><br>796 Serenity Drive, Watts, Oklahoma, 74964 | )<br>)  Case No. 18-MJ-173-JFJ<br>)<br>)<br>)<br>) |

**APPLICATION FOR A SEARCH WARRANT**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment "A":

located in the __Northern__ District of __Oklahoma__, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☒ evidence of a crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ✓ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession With Intent to Distribute Controlled Substances |
| 21 U.S.C. § 843(b) | Unlawful Use of a Communication Facility |
| 21 U.S.C. § 846 | Narcotics Conspiracy |

The application is based on these facts:

**See Affidavit of Cory Hallum, DEA SA, attached hereto.**

- ☒ Continued on the attached sheet.
- ☐ Delayed notice of ___ days (give exact ending date if more than 30 _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Cory Hallum, DEA SA
Printed name and title

Sworn to before me and signed in my presence.

Date: __12-17-18__

_____
Judge's signature

City and state:  Tulsa, OK     Tulsa, Oklahoma

U.S. Magistrate
Printed name and title

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

## INTRODUCTION AND AGENT BACKGROUND

I, Cory D. Hallum, Special Agent with the Drug Enforcement Administration ("DEA"), being duly sworn, depose and state that:

1. I am currently employed as a Special Agent with the Drug Enforcement Administration (DEA) and have been so employed since 1998. In February 1999, I was temporarily assigned to the Oklahoma City District Office. In May 1999, I reported to the Houston Field Division, Corpus Christi Resident Office, at which time I was assigned to the High Intensity Drug Trafficking Area (HIDTA) group. I remained an active member of the HIDTA group until 2002 when I was transferred to Enforcement Group One. In June 2006, I was transferred to the Tulsa Resident Office where I am currently assigned to the HIDTA group.

2. I have participated in numerous investigations involving drug trafficking violations, including, but not limited to, the distribution, importation, manufacturing, and possession with the intent to distribute controlled substances, and conspiracy to commit the same, as well as the use of communication facilities, such as telephones, digital telephone pagers, and other like facilities, to facilitate drug law violations, and, finally, controlled substance investigations that include the laundering of the proceeds of the unlawful distribution, or money laundering and conspiracy to commit the same.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and

does not set forth all of my knowledge about this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

4. This affidavit is made in support of an application to search the property located at 796 Serenity Drive, Watts, Oklahoma 74964, (the Subject Premises), for fruits, evidence, and instrumentalities of violations of Title 21, United States Code, Sections 841 (a)(1), 843 (b), and 846, the Subject Offenses, that is possession with intent and distribution of controlled substances, use of communication facilities to facilitate controlled substance violations, conspiracy to possess controlled substances with intent to distribute, and conspiracy to distribute controlled substances.

## PREMISES TO BE SEARCHED

5. The premises to be searched is located at 796 Serenity Drive, Watts, Oklahoma 74964. The premises to be searched is a single story residence with a detached carport that is located in Watts, Oklahoma, county of Delaware, *in the Northern District of Oklahoma*. The premises to be searched is further described as having white and light brown trim, with a "796" in dark color posted on a tree at the entrance of the driveway. The house faces North, and is the last house on the left on the South side of Serenity Drive from the intersection of US Highway 412 and Serenity Drive in Watts, Oklahoma. The detached carport faces North and is on the North side of the residence. The premises to be searched is the residence of Vernon Williams and Connie Sherrell.

## PROBABLE CAUSE

6. In September of 2018, agents with the Drug Enforcement Administration (DEA) Fayetteville Resident Office, Fort Smith Post of Duty, and Tulsa Resident Office, along with the assistance of local law enforcement agencies began actively investigating the distribution of

heroin and methamphetamine in the Western District of Arkansas and the Northern District of Oklahoma. During the course of this investigation, law enforcement identified Gregory Jobe, Vernon Williams, Gabriel Whitener and Connie Sherrell as distributors of heroin and methamphetamine in Northwest Arkansas and Watts, Oklahoma.

7. On September 4, 2018, Benton County Sheriff's Office was dispatched and responded to a medical emergency at 16397 Smith Ridge Road, Garfield, Arkansas, in the Western District of Arkansas. Deputies arrived along with the NEBCO Fire Department where it was determined that a subject identified as Nicholas Cline was unresponsive and not breathing. Nicholas Cline was transported to a local hospital, where, on September 5, 2018, at approximately 12:53 a.m., he was pronounced deceased. Nicholas Cline's estranged wife, Jesseka Cline, was present at the residence and advised investigators that there were approximately three grams of "black tar" heroin and seven grams of methamphetamine in the residence. She further advised the investigators where these items were located.

8. On September 5, 2018, at approximately 11:15 a.m., DEA Special Agent Robert Robinson advised Jesseka Cline of her rights per *Miranda*. Jesseka Cline informed investigators the subject "JOBE G" identified as Gregory Jobe was the subject that distributed heroin and methamphetamine the day before to her and to Nicholas Cline. They met Jobe at a park in Sulphur Springs, Arkansas, in the Western Disrtict of Arkansas, where Jobe distributed the controlled substances to them. Jesseka further advised that Jobe told them that he had just received heroin and methamphetamine from California, and she advised that Jobe supplied Nicholas with an additional amount of heroin at no cost. Jesseka told investigators that she and Nicholas returned to the residence located at 16397 Smith Ridge Road, Garfield, Arkansas, where she and Nicholas consumed the heroin that was supplied by Jobe. Jesseka advised

Nicholas went to sleep and later she realized that Nicholas appeared to be having a difficult time breathing. Jesseka alerted other family members inside the residence who called 911. As a result, medical personnel responded to the residence.

9. On September 5, 2018, the Benton County Sheriff's Office Narcotics Unit made contact with and arrested Gregory Jobe at his residence located at 796 N. Highway 59, Sulphur Springs, Arkansas, which is in the Western District of Arkansas. Investigators seized approximately three grams of heroin and approximately 8 grams of methamphetamine from Jobe's bedroom on this date. Jobe is on parole and has an active, signed search waiver on file with Probation and Parole.

10. On September 5, 2018, at 8:47 p.m., DEA SA Robinson advised Jobe of his rights per *Miranda* via a DEA-13 form. At 8:48 p.m., Jobe signed the Advice of Rights form. Jobe informed investigators his address is 796 Highway 59 North, Sulphur Springs, Arkansas. Jobe advised he had been residing at the address his entire life. Jobe stated he was staying in the same bedroom that he shared with his seven year old son. Jobe informed investigators he was currently on parole for Delivery of a Controlled Substance and Aggravated Assault. Jobe stated when law enforcement officers arrived at his residence on this date that he was in the bed. Jobe acknowledged investigators seized heroin and methamphetamine from inside his bedroom. Jobe admitted the heroin and methamphetamine belonged to him. Jobe stated he was "fronted" the heroin and methamphetamine from an unknown subject approximately one week ago. Jobe advised he sometimes distributed narcotics or controlled substances to other people. Jobe was asked when the last time he gave someone narcotics was to which he replied, "Recently." Upon being asked several follow up questions, Jobe advised investigators that he supplied heroin to Nicholas and Jesseka Cline recently and that they came to his house together in a Ford

4

Expedition. Jobe advised investigators he had recently gone to California and acquired the heroin and methamphetamine. Jobe informed investigators that the only person that he had distributed heroin to since he had gotten back from California was Nicholas Cline. SA Robinson asked Jobe if the heroin he distributed to Nicholas Cline was strong. Jobe replied, "Yeah it is kinda strong." SA Robinson asked Jobe, what made him say the heroin was strong? Jobe replied, "The way it makes you feel I guess."

11. Jobe informed investigators he would reveal the source of supply of the heroin by showing the sources information in his cell phone. Jobe consented to a search of his phone and identified Gabriel Whitener as his source of supply of heroin. Jobe stated that a subject he knew as "Big Dog Plug," who is an associate of Whitener's, was the subject he traveled to and from Bakersfield, California with recently. Jobe advised that "Big Dog Plug" resided with Whitener in Watts, Oklahoma. Jobe informed investigators that Whitener was the subject who arranged and orchestrated the trip to Bakersfield, California. Jobe advised that when he would call Whitener, he would usually meet him at the Walmart in Siloam Springs, Arkansas, located in the Western District of Arkansas, to conduct heroin transactions.

12. SA Robinson observed several videos on Jobe's cellular phone that were identified by Jobe as videos taken during a recent Bakersfield, California trip. SA Robinson also observed cellular phone number (479) 215-9182 saved under the contact "Gabe" identified as Gabriel Whitener. SA Robinson also observed the number (661) 376-4975 saved under the contact as "Big Dog Plug." Jobe informed investigators the subject "Big Dog Plug" met with an unknown subject in Bakersfield, California. Jobe advised the subject supplied "Big Dog Plug" with an unknown quantity of heroin and methamphetamine. Jobe showed investigators where he had the

contact for Nicholas Cline saved under "Nick Cline" phone number (479) 256-5243. The DEA Fayetteville Resident Office was able to identify "Big Dog Plug" as Vernon Williams.

13. In October of 2018, DEA Fayetteville Resident Office (FRO) developed a reliable, confidential source ("CS"). The CS advised he/she could purchase methamphetamine and heroin from both Gabriel Whitener and Vernon Williams. Vernon Williams' residence was identified as 796 Serenity Drive, Watts, Oklahoma, the Subject Premises.

14. On November 14, 2018, the DEA FRO utilized the CS to make phone contact with Vernon Williams at cell number (661) 376-4975. Williams agreed to meet the CS on this date. Agents searched the CS for illegal narcotics and contraband with negative results, and provided the CS with two thousand dollars in official advanced funds along with an audio/video recording device. The CS was driven by SA Robinson, in an undercover vehicle, to the meet location in Springdale, Arkansas, which is in the Western District of Arkansas. Williams arrived at the location and delivered approximately four ounces of methamphetamine and approximately two grams of heroin to the CS. During the transaction, agents with the DEA Fayetteville Resident Office identified Connie Sherrell as the driver of the gray older model Lexus and Williams as the front seat passenger. The CS conducted the transaction in the Lexus with Williams in the presence of Sherrell. The transaction was captured on the recording device utilized by the CS.

15. On November 15, 2018, agents observed the gray Lexus parked in driveway of Williams and Sherrell's residence located at 796 Serenity Drive, Watts, Oklahoma in the Northern District of Oklahoma, the Subject Premises. Law enforcement officers conducting surveillance observed a charcoal colored Mercury Cougar with an unknown California license plate parked in the driveway.

16. On November 27, 2018, the same reliable CS made an audio-recorded phone call to Williams in reference to purchasing methamphetamine and heroin. During the recorded phone call Williams agreed to distribute twenty-five grams of heroin to the CS for two thousand dollars. The CS informed Williams that he/she would be back in contact with him.

17. On November 28, 2018, the same reliable CS attempted to make a recorded phone call to Williams but he did not answer. The CS had previously informed investigators that when Williams was not available he/she would contact Williams' nephew and co-conspirator identified as Gabriel Whitener. The CS advised that Whitener resided on the same street as Williams and that Whitener and Williams worked together. The CS placed a recorded phone call to Whitener where the CS explained to Whitener that he/she had previously made plans on the date prior to purchase heroin from Williams. Whitener informed the CS that he was not sure where Williams was at the moment. Whitener asked the CS what he/she needed. The CS advised Whitener that Williams had agreed to distribute twenty-five grams of heroin for two thousand dollars to him/her. Whitener stated, "Yeah I got that." The CS asked, "Can I just come to you then?" Whitener replied, "Yeah." The CS informed Whitener that he/she was en route to his residence.

18. Plans were formulated for TFO Shannon Smith to drive the CS to conduct the controlled purchase in an undercover vehicle. The CS was searched for illegal narcotics and contraband with negative results. The CS was provided with two thousand dollars in official advanced funds. The CS received and incoming text from Whitener stating, "Hey how about 20 for 1600." The CS replied to Whitener agreeing to pay the sixteen hundred dollars for twenty grams of heroin. At approximately 3:57 p.m., the CS and TFO Smith arrived at Whitener's residence located at 390 Serenity Drive, Watts, Oklahoma in the Northern District of Oklahoma. TFO Smith parked in Whitener's driveway and the CS exited the U/C vehicle. The CS went to

the carport door, and was greeted by Whitener. The two then entered the residence. The CS and Whitener engaged in a drug related conversation. The CS stated, "Vernon said he was out of dope (methamphetamine) do you have any?" Whitener replied to the CS by telling him/her that he was currently out of methamphetamine as well and probably would not get anymore because he did not believe methamphetamine was as profitable as heroin. Whitener distributed the CS twenty grams of heroin and stated, "We got this in the day before yesterday." The CS advised, "At least you got it, I texted him forever." Whitener instructed the CS to be cautious of a certain portion of the heroin he had just distributed to the CS. The CS handed Whitener the sixteen hundred dollars in official advanced funds. At approximately 4:10 pm the CS exited the residence and entered the U/C vehicle. The CS met with agents at a predetermined location and provided TFO Smith with the audio/video recording device, as well as the heroin Whitener distributed to him or her. Agents field tested the heroin with a positive result. The agents again searched the CS' person with negative results.

19. On December 4, 2018, the DEA formulated plans to utilize the CS to make a controlled purchase at William's residence located at 796 Serenity Drive, Watts, Oklahoma, in the Northern District of Oklahoma. Agents photographed text messages on the CS' phone between the CS and Williams. The text messages were in regards to the CS going to Williams' residence on this date to purchase four ounces of methamphetamine. Plans were formulated for TFO Smith to drive the CS to conduct the controlled purchase in an undercover vehicle. The CS was searched for illegal narcotics and contraband with negative results, and was provided fifteen hundred dollars in official advanced funds along with an audio/video recording device. At approximately 3:34 pm, TFO Smith and the CS arrived at Williams' residence identified as 796 Serenity Drive, Watts, Oklahoma. The CS entered the residence through the front door and a

drug related conversation began between the CS and Williams. Williams stated, "The dope that Gabe (Gabriel Whitener) gave you yesterday was it the same as mine?" The CS replied, "I don't know." Williams replied, "What do you mean, you don't know." Williams replied, "Well we are partners, you know what I'm saying and I just want to know if he stepped on the dope." The CS replied, "I think so." Williams replied, "That is what I want to know." Williams then distributed the CS approximately four ounces of methamphetamine for fifteen hundred dollars, and approximately three grams of heroin at no charge. During the conversation, Williams continued to express his displeasure with Whitener. Williams stated, "I don't like how he stepped on the dope, I gave him so much dope to sell right." The CS replied, "Right." Williams stated, "How does he still have all this money and still has dope? That is why I was asking you about the dope you got. If it ain't this then he has done something to it." The CS replied, "I get it."

20. At approximately 3:45 pm, the CS exited the residence and entered the U/C vehicle. The CS met with agents at a predetermined location and provided TFO Smith with the audio/video recording device, as well as the methamphetamine and heroin Williams had distributed to him or her. The agents field tested the heroin and methamphetamine with a positive result. The agents again searched the CS' person with negative results.

21. On December 12, 2018, the CS contacted agents and informed them that Williams had contacted him/her via cell phone. The CS advised that Williams had contacted him/her wanting the CS to purchase his remaining four ounces of methamphetamine for fifteen hundred dollars. Furthermore, the CS advised that Williams informed him/her that he was planning to travel to California and return with a large amount of methamphetamine and heroin within the next several days. The CS was instructed by agents to inform Williams that he/she would not be

9

able to conduct the transaction until the following date. The CS contacted agents and informed them that he/she told Williams that the transaction would occur on the following date. The CS advised that Williams informed him/her that he would leave the methamphetamine with "Connie" identified as Connie Sherrell. Sherrell is believed to be Williams' wife or girlfriend and also resides at 796 Serenity Drive, Watts, Oklahoma in the Northern District of Oklahoma.

22. On December 13, 2018, the DEA utilized the CS to make a recorded phone call to Connie Sherrell. Sherrell agreed to meet the CS in Springdale, Arkansas. Sherrell informed the CS that Williams had not yet departed for California and would travel with her to meet with the CS. Plans were formulated for TFO Smith to drive the CS to conduct the controlled purchase in an undercover vehicle. The CS was searched for illegal narcotics and contraband with negative results, and was provided with fifteen hundred dollars in official advanced funds along with an audio/video recording device. During the transaction, DEA Fayetteville Resident Office identified Connie Sherrell as the driver of the gray older model Lexus in which Williams was the front seat passenger. The CS conducted the transaction in the Lexus with Williams in the presence of Sherrell. During the transaction, Williams agreed to distribute the CS a pound of methamphetamine once he returned from California in the next several days. The CS returned to the U/C vehicle and provided TFO Smith with the audio/video recording device, as well as the methamphetamine distributed by Williams. The agents field tested the methamphetamine with a positive result. The agents again searched the CS' person with negative results.

23. Based on information gained as a result of a state ping warrant, agents now know that the shipment of methamphetamine from California is set to arrive in Watts, Oklahoma, at approximately 10:00 p.m., central time, December 17, 2018. Agents plan to wait until the shipment arrives in Watts, Oklahoma before executing the search warrant, so as to avoid possible

10

notification to the drivers by any occupants of the residence. Because of the timeline described above, including the possibility that the shipment may arrive earlier or later than 10:00 p.m., reasonable cause exists to allow the search warrant to be executed during the day or night.

24. Agents believe, based on the overall investigation up to this point that is summarized above, that Vernon Williams and Connie Sherrell distribute methamphetamine and heroin in the Western District of Arkansas and the Northern District of Oklahoma, and that they store these controlled substances at their residence, the Subject Premises. As such, agents believe that Vernon Williams and Connie Sherrell use the Subject Premises as a stash or storage location for the controlled substances that they distribute. Based on the above, I am requesting the authorization described in the below paragraphs. I have participated in numerous search warrants on narcotics traffickers who have stored and concealed narcotics at their residences. It has been my experience that narcotics traffickers will often use their residences to store the narcotics they distribute as well as additional evidence of their drug trafficking activities like buyer lists, seller lists, ledgers, bank records, wire transfer receipts, other financial records related to the distribution of controlled substances and the proceeds derived therefrom, paraphernalia, and packing materials. Further, it is also my experience, that narcotics traffickers will often have firearms at their stash or storage locations to protect their product and the proceeds derived from distribution, and that they will often utilize counter surveillance equipment in an effort to alert them if law enforcement or other unwarranted visitors are on the premises.

25. It has also been my experience and training that narcotics traffickers use cellular telephones and electronic devices to store, conceal, and record information that pertains to their narcotics distribution, including but not limited to photographs and videos of the controlled

substances, and related paraphernalia, money or weapons used to protect said product and proceeds, call lists, and contact information for buyers, sellers and other co-conspirators, and information concerning financial institutions or services used to store, conceal, or transfer the proceeds of distribution. As detailed in this affidavit concerning the transactions on November 14, 2018, December 4, 2018, and December 13, 2018, that Vernon Williams and Connie Sherrell use their telephone to further narcotics trafficking activities. In my background, training and experience, narcotics traffickers and those involved in narcotics trafficking typically use several phones to compartmentalize different aspects of their business. For example, narcotics traffickers will frequently use one phone to talk to one supplier and another phone to talk to another supplier and yet a different phone to speak with couriers and so on. As such, this leads me to believe that Vernon Williams and Connie Sherrell most likely have other phones, in addition to the phone listed in this affidavit, to communicate about their narcotics trafficking business. Furthermore, narcotics traffickers will often cease using cellular phones and keep them in their possession, regardless of the fact that they are no longer using them. I have participated in several search warrants in narcotics investigations where the trafficker had numerous phones that they were no longer using. In my background training and experience, narcotics traffickers do this to maintain a collection of phones they can cycle through, to avoid law enforcement detection, often switching SIM cards and phone numbers of these devices to further avoid detection.

26.     Based on the overall investigation as detailed above, agents know that Vernon Williams and Connie Sherrell use and maintain the Subject Premises in the Northern District of Oklahoma, to facilitate or aid in the commission of the Subject Offenses.

**ITEMS TO BE SEIZED**

27. Based on the foregoing, I respectfully submit that there is probable cause to believe that the items listed in Attachment B, which constitute evidence of violations of the Subject Offenses, will be found at the Subject Premises, further described in Attachment A.

## AUTHORIZATION REQUEST

28. For all of the reasons described above, there is probable cause to believe that evidence of violations of Title 21, United States Code, Sections 841(a)(1), 843(b), and 846, the Subject Offenses, that is possession with intent to distribute and distribution of controlled substances, use of communication facilities to facilitate controlled substance violations, conspiracy to possess controlled substances with intent to distribute, and conspiracy to distribute controlled substances as described above and in Attachment B of this affidavit, incorporated herein by reference, will be found in a search of the Subject Premises, as further described above and in Attachment A of this affidavit.

Respectfully submitted,

_____
Cory D. Hallum
DEA SA

Subscribed and sworn to before me on \_\_12-17_____, 2018

_____
JODI F. JAYNE
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF OKLAHOMA

13

## ATTACHMENT A
**Premises To Be Searched**

The premises to be searched is located at 796 Serenity Drive, Watts, Oklahoma 74964. The premises to be searched is a single story residence with a detached carport that is located in Watts, Oklahoma, county of Delaware. The premises to be searched is further described as having white and light brown trim, with a "796" in dark color posted on a tree at the entrance of the driveway. The house faces North, and is the last house on the left on the South side of Serenity Drive from the intersection of U.S. Highway 412 and Serenity Drive in Watts, Oklahoma. The detached carport faces North and is on the North side of the residence. The premises to be searched is the residence of Vernon Williams and Connie Sherrell.

14



## ATTACHMENT B
### Particular Things To Be Seized

The items to be seized are evidence, fruit, and instrumentalities of violations of Title 21, United States Code, Sections 841 (a)(1), 843 (b), and 846, the Subject Offenses, that is possession with intent and distribution of controlled substances, use of communication facilities to facilitate controlled substance violations, conspiracy to possess with intent to distribute, and conspiracy to distribute controlled substances. Specifically the following items are to be seized: articles of personal property tending to establish and document possession and/or distribution of controlled substances; or a conspiracy to do such; as well as documents related to financial transactions involving the proceeds of distribution, including but not limited to the following:

1. Controlled substances, buyer lists, seller lists, ledgers, financial records relating to the purchase, sale, or distribution of controlled substances, paraphernalia including but not limited to weight scales and packaging material.

2. Books, records, receipts, notes, bank statements and other bank records, money drafts, letters of credit, money orders, cashiers checks, and other monetary instruments, passbooks, bank checks, safe deposit box keys and records, and items evidencing the obtaining, secreting, transfer, concealment, and/or expenditure of proceeds from the sale of controlled substances; items providing evidence pertaining to structuring or money laundering, and documentation evidencing the

expenditure of the proceeds of narcotics distribution to acquire assets, including, but not limited to, the purchase of vehicles, clothing, furniture, and electronic equipment.

3. Income tax returns, W-2 and W-4 forms, receipts, and other documents pertaining to the filing of personal and business tax returns.

4. United States currency and other financial instruments in amounts indicative of the proceeds of illegal drug trafficking.

5. Indicia of occupancy, residency, and/or ownership of real property including but not limited to utility and telephone bills, mortgage payment receipts and keys.

6. Papers, tickets, notes, schedules, receipts, and other items relating to domestic, international, and interstate travel.

7. Photographs, and/or video tape reproductions of co-conspirators, assets, or controlled substances.

8. Cellular telephones, personal and business calendars, address and/or telephone books, rolodex indices, pager or cellular telephone memory, and papers reflecting names, addresses, telephone numbers, pager numbers, fax numbers, telex numbers, correspondences of the subjects of the investigation, and their criminal associates, sources of supply, customers, and financial institutions.

9. Weapons and counter-surveillance equipment that might be utilized in the conduct of illegal drug transactions.